UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTHONY HAIRSTON,

        Plaintiff,                  Case No. 2:22-cv-68

v.                                      Honorable Robert J. Jonker

UNKNOWN GARLINGHOUSE et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 3.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bryan and Savoie. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Garlinghouse, Gurnoe, and Anderson: Plaintiff's (i) official capacity claims, (ii) Eighth Amendment claims, and (iii) Fourteenth Amendment substantive due process claims. Plaintiff's

First Amendment retaliation claims against Defendants Garlinghouse, Gurnoe, and Anderson remain in the case.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF officials in both their personal and official capacities: Sergeant Unknown Anderson; and Prison Guards Unknown Garlinghouse, Unknown Bryan, Unknown Savoie,[1] and Unknown Gurnoe. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on May 21, 2020, Defendant Garlinghouse "falsified a misconduct report" regarding Plaintiff's and another inmate's possession of drugs. (*Id.*, PageID.3; *see id.*, PageID.4–5.)[2] Specifically, Plaintiff alleges that after "Defendant Garlinghouse escorted Plaintiff . . . and inmate Coleman out of Neebish unit A-wing bathroom," Defendant Garlinghouse "roughly [and] sexually searched Plaintiff . . . and inmate Coleman," and then asked them, "where is [sic] the drugs?" (*Id.*, PageID.4.) Plaintiff and inmate Coleman informed Defendant Garlinghouse that they did not have any drugs and that they would both "be filing a grievance [and] sexual [Prison Rape Elimination Act (PREA)] grievance." (*Id.*) Plaintiff contends that Defendant Garlinghouse then stated, "you can't grieve a ticket!" (*Id.*) Thereafter,

---

[1] When listing the parties in this action, Plaintiff spells Defendant Savoie's last name as "Savioe" (Compl., ECF No. 1, PageID.2); however, in the case caption and in the body of the complaint, Plaintiff spells Defendant's last name as "Savoie." (*Id.*, PageID.1, 6–7.) In this opinion, the Court identifies this Defendant as Defendant Savoie.

[2] The Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

Defendant Garlinghouse "re-entered into the unsecured Nee[b]ish unit A-wing bathroom, . . . picked up something off the floor," and brought it to the officers' desk, stating "I knew it was drugs." (*Id.*) Plaintiff then received a misconduct ticket for "substance abuse (marijuana)," and he was placed on temporary segregation/non-bond toplock status.[3] (*Id.*, PageID.5 (parentheses in original).)

Subsequently, on May 29, 2020, Warden Horton, who is not named as a Defendant, "pulled [the] . . . misconduct [ticket] . . . [and] requested Defendant Garlinghouse to rewrite [it] . . . due to inconsistencies in Defendant Garlinghouse['s] report." (*Id.*, PageID.6.) Plaintiff then received "a rewritten version of Defendant Garlinghouse['s] initial misconduct report," and Plaintiff was removed from temporary segregation/non-bond toplock status. (*Id.*) Later that same day, when Plaintiff was in the cardroom, Defendant Savoie asked Plaintiff why he was out of his cell when he was on temporary segregation/non-bond toplock status. (*Id.*) Plaintiff advised Defendant Savoie that he no longer had that status, and he showed Defendant Savoie his paperwork. (*Id.*) "Defendant Savoie read the documents [and] deliberately gave Plaintiff . . . [a direct order] to return to his cell, stating 'we do what we want at URF.'" (*Id.*, PageID.6–7.) Plaintiff obeyed the direct order and returned to his cell. (*Id.*, PageID.7.) Plaintiff also grieved the issue. (*Id.*)

The next day, May 30, 2020, when Plaintiff "was in the Neebish unit lobby," Defendant Bryan asked Plaintiff why he was out of his cell when he was on temporary segregation/non-bond toplock status. (*Id.*) Plaintiff informed Defendant Bryan that he no longer had that status and "remind[ed] Defendant Bryan that he (Bryan) worked Neebish unit when Plaintiff . . . was removed from temp[] seg/non-bond toplock." (*Id.*) Plaintiff "produced the document to show Defendant

---

[3] "Toplock" is when the prisoner "is restricted to their own cell, room, or bunk and bunk area." Mich. Dep't of Corr., Policy Directive 03.03.105, ¶¶ OOO–QQQ (eff. Apr. 18, 2022); *see* Mich. Dep't of Corr., Policy Directive 03.03.105, ¶¶ MMM–OOO (eff. July 1, 2018).

Bryan, who read it [and] deliberately gave Plaintiff a direct order to return to his cell." (*Id.*) Plaintiff obeyed the direct order, and subsequently, he grieved the issue. (*Id.*)

On June 3, 2020, Plaintiff attended a major misconduct hearing for the substance abuse charge, and he was found "not guilty, reason being Defendant Garlinghouse['s] fabrication of who was in possession." (*Id.*, PageID.8.)

Subsequently, on June 24, 2020, when Plaintiff "was on the Neebish unit A-wing phone," Defendant Gurnoe "forced Plaintiff to hang the phone up, ending Plaintiff['s] . . . phone call." (*Id.*) Defendant Gurnoe then ordered Plaintiff's cellmate to leave the cell and ordered Plaintiff inside his cell. (*Id.*) "Defendant Gurnoe told Plaintiff . . . 'you like writing grievances, let's see how you like being locked in your cell!'" (*Id.*) Defendant Gurnoe then "backlocked Plaintiff . . . inside his cell." (*Id.*) Plaintiff states that "backlock is when an officer disables the door from being opened from the inside of the cell[, and] only an officer can open the door from [the] outside." (*Id.*) Approximately twenty-five minutes later, Plaintiff "got Defendant Sgt. Anderson to stop at his cell," and Plaintiff asked Defendant Anderson why he was backlocked in his cell. (*Id.*, PageID.9.) Defendant Anderson "told Plaintiff . . . 'you shouldn't write grievances [and] you wouldn't be backlocked in your cell!'" (*Id.*) Approximately two hours later, Plaintiff "was called to the Neebish unit officer desk where Defendant Gurnoe informed Plaintiff he [would] be moved to another unit." (*Id.*) Plaintiff was then moved to a "housing unit named [the] Marquette unit." (*Id.*)

Plaintiff does not identify the specific constitutional rights that Defendants infringed; however, the allegations in his complaint implicate the protections of the First Amendment, Eighth Amendment, and Fourteenth Amendment. As relief, Plaintiff seeks compensatory and punitive damages, and he states that he "would like for [Defendant] Garlinghouse to be reprimanded [and] retrained." (*Id.*, PageID.10.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity

As noted above, Plaintiff sues Defendants in both their personal and official capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks both monetary damages and injunctive relief in the form of "[Defendant] Garlinghouse to be reprimanded [and] retrained." (Compl., ECF No. 1, PageID.10.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subject to the illegal conduct again or present a "case or controversy," unless accompanied by continuing, present adverse effects. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (addressing injunctive relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur again. In fact, Plaintiff complains about events that occurred more than two years ago. Plaintiff's allegations relate solely

7

to past harm, not future risk of harm. Therefore, the possibility that Plaintiff will be subjected to the same allegedly unconstitutional activity is far too speculative to warrant injunctive relief or to deem the alleged activity a continuing violation of federal law.

Accordingly, Plaintiff's official capacity claims against Defendants Garlinghouse, Bryan, Savoie, Gurnoe, and Anderson will be dismissed.

### B.  First Amendment Retaliation

Plaintiff's allegations against Defendants Garlinghouse, Bryan, Savoie, Gurnoe, and Anderson implicate the protections of the First Amendment against retaliation. (*See* Compl., ECF No. 1, PageID.4–9.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.  Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First

8

Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Here, Plaintiff references filing, or advising at least one prison official that he would file, several grievances and a PREA grievance. (*See* Compl., ECF No. 1, PageID.4, 7.) Although some of Plaintiff's allegations regarding filing grievances are conclusory, because the filing of grievances constitutes protected activity, the Court assumes, without deciding, that Plaintiff has stated the first element of a First Amendment retaliation claim.

    **2. Adverse Action**

  To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently

adverse action to support a claim of retaliation."). Here, Plaintiff alleges that he received a misconduct ticket for "substance abuse (marijuana)" (Compl., ECF No. 1, PageID.5), and his receipt of a misconduct charge constitutes an adverse action.

Plaintiff also alleges that on two separate occasions, despite no longer being on temporary segregation/non-bond toplock status—meaning he was permitted to leave his cell and to go to the unit's cardroom and lobby—Defendants Savoie and Bryan ordered Plaintiff to return to his cell and to remain in his cell. (*Id.*, PageID.6–7.) Further, on another occasion, Plaintiff alleges that Defendant Gurnoe "forced Plaintiff to hang the phone up, ending Plaintiff['s] phone call" and then "backlocked Plaintiff . . . inside his cell," meaning he could not exit his cell. (*Id.*, PageID.9.) Thereafter, despite advising Defendant Anderson that he had been backlocked in his cell, Defendant Anderson did not permit Plaintiff to leave his cell. (*See id.*)

The Sixth Circuit has held that "restricting a prisoner's privileges and freedom of movement within the institution is an adverse action for purposes of establishing the second element of a retaliation claim." *Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841, *3 (6th Cir. May 3, 2019) (citing *Maben*, 887 F.3d at 267; *Hill*, 630 F.3d at 474); *see Maben*, 887 F.3d at 267 (discussing that in the prison context, "the deprivation of privileges is hardly 'inconsequential'—indeed, they are all that prisoners really have"). In the present case, Plaintiff's allegations regarding his restriction to his cell lack specificity and on all three occasions when he was ordered to remain in his cell, Plaintiff's allegations suggest that, ultimately, he was not restricted to his cell for a long period of time. However, in determining whether an action constitutes an adverse action, the Sixth Circuit has held that courts should "look to both the punishment [the prisoner] *could* have faced and the punishment he ultimately did face." *Maben*, 887 F.3d at 266 (emphasis added) (citations omitted)). Although Plaintiff ultimately was not

10

restricted to his cell for a long period of time in any of the three incidents at issue here, viewing the allegations in the complaint in the light most favorable to Plaintiff, because the duration of his cell restriction had the potential to be longer and restricting a prisoner's freedom of movement is an adverse action, the Court assumes, without deciding, that Plaintiff has stated the second element of a First Amendment retaliation claim.

### 3. Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

#### a. Defendants Savoie and Bryan

With respect to Defendants Savoie and Bryan, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no facts from which to reasonably infer that Defendant Savoie's and Bryan's actions were motivated by his protected conduct. Plaintiff's allegations against Defendants Savoie and Bryan rest entirely on a conclusory allegation of temporal proximity—that he filed grievances around the time that these Defendants took adverse actions against him.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d

11

at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, nothing in the complaint suggests that Defendants Savoie and Bryan were aware that Plaintiff had filed any grievances or engaged in any other protected conduct when they told Plaintiff to return to his cell. (*See* Compl., ECF No. 1, PageID.6–7.) Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). Accordingly, because Plaintiff fails to allege any facts to suggest that Defendants Savoie and Bryan were motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against these Defendants.

### b. Defendants Garlinghouse, Gurnoe, and Anderson

With respect to Defendant Garlinghouse, Plaintiff alleges that he received a misconduct charge for substance abuse after he advised Defendant Garlinghouse that he would file a grievance and a PREA grievance regarding Defendant Garlinghouse's search of Plaintiff's person. (*See* Compl., ECF No. 1, PageID.4–5.) As to Defendant Gurnoe, Plaintiff alleges that, on June 24, 2020, Defendant Gurnoe "backlocked Plaintiff . . . inside his cell," telling Plaintiff "you like writing grievances, let's see how you like being locked in your cell!" (*Id.*, PageID.8) Further, with respect to Defendant Anderson, Plaintiff alleges that approximately twenty-five minutes later, Plaintiff

12

"got Defendant Sgt. Anderson to stop at his cell," and Plaintiff asked Defendant Anderson why he was locked in his cell. (*Id.*, PageID.9.) Defendant Anderson "told Plaintiff . . . 'you shouldn't write grievances [and] you wouldn't be backlocked in your cell!'" (*Id.*) Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's retaliation claims against Defendants Garlinghouse, Gurnoe, and Anderson may not be dismissed on initial review.

### C. Eighth Amendment

Plaintiff alleges in a conclusory manner that Defendant Garlinghouse "roughly [and] sexually searched Plaintiff" after Defendant Garlinghouse "escorted Plaintiff . . . and [another] inmate" out of the bathroom and advised them that he was looking for drugs. (Compl., ECF No. 1, PageID.4.) Plaintiff's allegations against Defendant Garlinghouse implicate the protections of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

13

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges that Defendant Garlinghouse "roughly [and] sexually searched Plaintiff" when Defendant Garlinghouse was looking for drugs. (Compl., ECF No.1, PageID.4.) Although Plaintiff's description of the search might seem to implicate the Eighth Amendment's protection against the excessive use of force, in the prison context, searches and shakedowns are an ordinary and necessary incident of prisoner life. *See Hudson v. Palmer*, 468 U.S. 517, 526–30 (1984). Such searches are, by their very nature, aggressive and are necessarily intrusive, even sexually intrusive. In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court noted the following was an "apt description" of such a search: "(T)he officer must feel with sensitive fingers

14

every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet." *Id*. at 17 n.13 (citation omitted). Plaintiff's conclusory description of Defendant Garlinghouse's search of Plaintiff's person as "rough" does not suffice to show that Defendant Garlinghouse inflicted any pain that was sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

Moreover, although "[f]ederal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment," in the context of claims against prison officials, the Sixth Circuit has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks may not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]" *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019) (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005)); *see also, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson*, 158 F. App'x at 661 (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards). However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty*

15

court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that during one search in which Defendant Garlinghouse was looking for drugs, Defendant Garlinghouse "roughly [and] sexually searched Plaintiff." (Compl., ECF No. 1, PageID.4.) Plaintiff's singular interaction with Defendant Garlinghouse, which involved Defendant Garlinghouse searching Plaintiff's person for drugs, differs from the repeated, coercive interactions between the plaintiff and defendant in *Rafferty*. As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim. *See Rafferty*, 915 F.3d at 1095–96.

Because Plaintiff fails to plead sufficient facts to permit the Court to draw a reasonable inference that Defendant Garlinghouse violated the Eighth Amendment, Plaintiff's Eighth Amendment claim will be dismissed.

### D.     Fourteenth Amendment Substantive Due Process

Plaintiff alleges that, on May 21, 2020, Defendant Garlinghouse "falsified a misconduct report" regarding Plaintiff's possession of drugs. (Compl., ECF No. 1, PageID.3; *see id.* 4–5.) To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendant Garlinghouse's actions, he fails to state such a claim.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth

Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999); *see also Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004); *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Here, Plaintiff contends that at his major misconduct hearing for the substance abuse charge, he was found "not guilty, reason being Defendant Garlinghouse['s] fabrication of who was in possession." (Compl., ECF No. 1, PageID.8). Although Plaintiff contends that Defendant Garlinghouse "fabricat[ed] . . . who was in possession" of the drugs that Defendant found, Plaintiff's complaint is devoid of facts suggesting that Defendant Garlinghouse planted the contraband in an attempt to frame Plaintiff. (*Id.*) Instead, Plaintiff's allegations show that he and another inmate were in the bathroom of their unit, and that Defendant Garlinghouse recovered an object from the floor of that bathroom. (*See id.*, PageID.4–5.) Defendant Garlinghouse's recovery of this object, which Defendant Garlinghouse believed to be drugs, formed the basis for Plaintiff's substance abuse misconduct charge. (*See id.*) Ultimately, Plaintiff was found not guilty of the substance abuse misconduct charge because of issues with "who was in possession" of the drugs. (*Id.*, PageID.8.) However, Plaintiff's allegations, at most, show that Defendant Garlinghouse negligently assumed that the drugs recovered from the bathroom—where Plaintiff had been with another inmate upon Defendant Garlinghouse's arrival—were Plaintiff's. Plaintiff does not allege that Defendant Garlinghouse acted to frame Plaintiff by planting the drugs in the bathroom, and any negligent action by Defendant Garlinghouse is insufficient to establish liability under § 1983.

Accordingly, Plaintiff fails to state a substantive due process claim under the Fourteenth Amendment.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Bryan and Savoie will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Garlinghouse, Gurnoe, and Anderson: Plaintiff's (i) official capacity claims, (ii) Eighth Amendment claims, and (iii) Fourteenth Amendment substantive due process claims. Plaintiff's First Amendment retaliation claims against Defendants Garlinghouse, Gurnoe, and Anderson remain in the case.

An order consistent with this opinion will be entered.

Dated:    July 22, 2022                    /s/ Robert J. Jonker
                                           Robert J. Jonker
                                           United States District Judge